**EXHIBIT A**

# CONSTITUTION AND BY-LAWS OF THE "GERMAN-AMERICAN SETTLEMENT LEAGUE, INC." ("G.A.S.L., INC.")

**This edition of the G.A.S.L., Inc. By-Laws / Constitution was accepted as written by the Membership at the Annual General Membership Meeting held on _____, 2015.**

## CONSTITUTION AND BY-LAWS OF THE
## "GERMAN-AMERICAN SETTLEMENT LEAGUE, INC."

### ARTICLE I

Section 1. This organization shall be known as the GERMAN-AMERICAN SETTLEMENT LEAGUE, INC. (hereinafter, referred to as, "G.A.S.L., Inc." or "Corporation" or "Organization"), in accordance with its charter, duly filed with the Secretary of State of the State of New York.

Section 2. The use of the words he, him, his, and himself shall mean the same as she, her, and herself.

### ARTICLE II

Section 1. The objectives of the Corporation are:

To promote the social, physical and mental welfare of its members by offering them adequate recreation facilities and enjoyment;

To enlighten them in the true spirit of their civic obligations and protection of the natural environment;

To establish among them high standards of good conduct, deportment, honor and integrity;

To promote and inculcate in its youth a spirit of loyalty, love for the country, respect for the flag of the United States, and to train and instruct them in the theory and practice of good citizenship;

To encourage science and art, and disseminate literature for the purpose of teaching the true ideals of benevolence, charity and philanthropy;

To aid, protect and otherwise assist its members and their families or those dependent upon them in case of distress caused by sickness, unemployment or otherwise, and to generally alleviate their suffering and prevent them from becoming prey to poverty.

To aid and assist worthy charitable institutions, communities, societies or hospitals and to generally dispense its funds for purposes consistent with the aims and objectives herein before stated and in accordance and in conformity with such By-Laws, rules and regulations as the Corporation may from time to time enact.

15

## ARTICLE III
### Membership

Section 1.     Membership in the G.A.S.L., Inc. is open to all adult persons of good character and reputation. The G.A.S.L., Inc. is committed to equal housing opportunity.  This policy applies to all G.A.S.L., Inc. activities, including applications for membership. The G.A.S.L., Inc. does not discriminate based on race, color, national origin, ethnicity, sex, gender, religion, creed, disability, source of income, sexual orientation, familial status, age, marital status, military status, veteran status, status as a victim of domestic violence or any other basis prohibited by law.

Membership in the G.A.S.L., Inc. is available as a A) Member and an B) Associate Member, the specific requirements of each are as follows:

    a.) <u>MEMBER</u>:

       A Member is a person who in addition to meeting the general requirements of membership, owns or jointly owns with another Member an existing house or bungalow on the property of the G.A.S.L., Inc. in Yaphank, Long Island, New York.

       If a Member is the sole owner of a house or bungalow, Member status may be extended to one member of the sole owners' immediate family, provided the prospective member conforms to all other requirements of membership.

       Member Status will terminate when compliance with any or all of the here before described requirements ceases. A Member who voluntarily terminates his Member Status may remain as an Associate Member.

    b.) <u>ASSOCIATE MEMBER</u>:

       An Associate Member is a member who fulfills all the requirements of membership except the requirements for ownership of a house or bungalow on the property of the G.A.S.L., Inc. Associate Members may not serve on the Board of Directors, and do not have voting privileges.

       Whenever reference is made herein to the "immediate family," it shall be construed to mean: father, mother, sibling, husband, wife, son or daughter.

Section 2.     Application for Homeownership / Membership must be made on the official membership application form, accompanied by a credit report and photo identification.

16

Section 3.      Each application for membership as either a <u>Member</u> or an <u>Associate Member</u> shall be investigated and approved by the Board of Directors.

A majority vote by the Board of Directors is required for approval of any application.

Final acceptance of new members for Homeownership / Full Member Status shall be decided by a majority vote of the Board of Directors. Upon approval by the Board of Directors, the initiation fee and dues shall be submitted to the Treasurer. One initiation fee shall be paid per house. Final acceptance of Associate Members shall be decided by the Board of Directors.

Section 4.      An applicant may consider himself admitted to the G.A.S.L., Inc. as soon as he receives his membership card signed and approved by the President or his accredited representative. A rejected applicant will be notified in writing.

Section 5.      Resignation from membership of this organization must be made in writing and submitted to the Secretary.

**<u>ARTICLE IV</u>**
**Duties of Members**

Section 1.      It shall be the duty of Members and Associate Members to conduct themselves in a proper manner so as not to bring the organization into discredit; to act loyally with respect to the organization, its officers and members; to fully support all such measures as would tend to add to the prosperity and reputation of the organization.

Section 2.      It shall be the duty of Members and Associate Members to support and obey the Constitution and By-Laws of the Organization and to yield to the decision of the majority, to pay the dues and community assessments promptly when due, to make use of the means the Organization offers for their physical and mental development; to attend meetings called to the extent possible, and to assist the Officers in the fulfillment of their duties.

Section 3.      It is the duty of members to inform the Organization's Secretary immediately of any change of address by submitting the change of address in writing to the Secretary.

Section 4.      A member may be expelled for acts dishonorable and disgraceful in nature and character; for acts contrary to the principles, aims and purposes of the Organization; for scandalous and offensive acts tending to injure the reputation and esteem of the Organization; for default in payment of membership dues and or community assessments if such default is not sufficiently excused, or for knowingly and willfully giving false information in their application for membership. No immoral, improper, offensive or unlawful use shall be made of the property or any part thereof and all valid laws, zoning ordinances and regulations of all governmental bodies having jurisdiction thereof shall be observed.

## ARTICLE V
### Rights of Members

Section 1.    All members have equal rights; i.e., to take part in meetings by voice or vote; to make motions, complaints, charges, addresses; to use the property of the Organization for purposes it is destined for, and are eligible for any office provided they meet the qualifications of that office except that Associate Members do not have the right to vote and are ineligible for office.

Section 2.    Every member of the Organization shall be entitled to a fair hearing for offenses involving reprimand, suspension or expulsion, except only for non-payment of dues or assessments. No member shall have a hearing unless charges duly specifying the offenses, so as to fully apprise him of the nature thereof and enable him to prepare his defense.

Section 3.    The Board of Directors shall have the power to suspend any member pending their hearing. If the charges are finally dismissed either after their hearing or after appeal, the member charged shall be reinstated to membership and all dues which may have accrued pending his suspension shall be remitted.

Section 4.    Within three (3) days after charges have been duly filed with the Secretary of the Organization, the Secretary shall forward a true written copy of same, and notice of the date and place set for the hearing to the accused by registered mail at his last known postal address. Within the same time the Secretary shall also notify the member or members preferring the charges of the time and place set for the hearing and such shall be the notice for the person presenting the charges to attend. Such charges shall then be submitted to a permanent Inquiry and Arbitration Board of five (5) members, appointed by the President and confirmed at a special Board of Directors Meeting.

Section 5.    Such Inquiry and Arbitration Board shall meet at the time and place set for the hearing of the charges and shall report to the President upon the disposition of such charges.

Section 6.    From the decision of the Organization Inquiry and Arbitration Board there will be no further appeal. It shall be final.

## ARTICLE VI
### Membership Dues

Section 1.    Membership dues are to be paid annually in advance (due January 1st of every year). The amount of the annual membership dues shall be recommended by the Board of Directors and approved by the general membership. If a member does not pay membership dues within ninety (90) days, they relinquish their membership status.

Section 2.    Any person admitted to Homeownership / Full Membership, shall pay an initiation fee. The amount of the initiation fees shall be recommended by the Board of Directors and approved by the Membership. Initiation fees will also apply when a Homeowner / Full

Member wishes to sell his existing house in order to purchase another house on the G.A.S.L., Inc. property. Homeowners / Members may not own more than one house on the G.A.S.L., Inc. property.

A person who takes over or inherits the ownership of a house or bungalow on the G.A.S.L., Inc. property belonging to an immediate Member of his family shall be excused from paying the initiation fee.

## ARTICLE VII
### Annual Membership Meeting

Section 1.    The annual membership meeting shall be held in the second half of May at a date and hour to be fixed by the Board of Directors for the purpose of electing officers and for the transaction of such other business as may be brought before the meeting.

Section 2.    It shall be the duty of the Organization's Secretary to cause notice of each annual meeting to be mailed / delivered to each member of the Organization at least thirty (30) days before the date of the meeting.

Section 3.    Special meetings may be held whenever called by the Board of Directors. It shall be the duty of the Secretary to cause notice of such special meetings to be mailed / delivered to each member at least ten (10) days before the date of such meetings stating briefly the objective or the objectives thereof.

Section 4.    At any duly called annual or special meeting, a majority vote of the Members present is sufficient for ratification of any business submitted to the membership and requiring the membership approval or disapproval, unless otherwise stated herein.

Section 5.    A quorum shall exist in the annual or special meeting when a majority of the Members in good standing are present.

Section 6.    Each Member with proper credentials shall be entitled to one (1) vote.

## ARTICLE VIII

Section 1.    The Order of Business at any meeting shall be as follows:

1. Pledge to the Flag
2. Roll Call of Members
3. Moment of Silence for Departed Members
4. Reading of Minutes of Previous Meeting
5. Treasurer's Report
6. Sickness and Distress
7. Committee Reports
8. Petitions for Membership
9. Balloting for Membership

19

10.   Reading of Correspondence
11.   Unfinished Business
12.   New Business
13.   Good & Welfare
14.   Adjournment

## ARTICLE IX

Section 1.    The sequence of the above Order of Business may be altered or amplified by the majority consent of the Members at any Meeting.

## ARTICLE X
### Board of Directors

Section 1.    The business and the property of the G.A.S.L., Inc. shall be controlled by the Board of Directors. The Board of Directors is responsible for the management of all the affairs of the Corporation, including its purchases or sales of property which must be approved by an affirmative vote of a majority of the membership, and the execution of legal instruments with or without the Corporate Seal in such manner as is deemed best and most advantageous for the interest of the Corporation. Increases in annual fees shall be recommended to the Homeowners / Membership and approved by the general membership.

Section 2.    <u>Directors.</u>   The President, Vice President, Treasurer, and Secretary are automatically members of the Board of Directors during their term of office.

Other Directors, six (6) in number shall be elected at the Annual Membership Meeting, and shall be classified in respect to the time for which they shall severally be elected, by dividing them into three (3) classes, each class consisting of the whole number elected. Each Director shall serve for the term for which he shall have been elected or appointed. He shall be ineligible for re-election as a Director at the election meeting at which time his term has expired, but may be elected again the following year.

Section 3.    The number of Directors may be altered from time-to-time by the alteration of the By-Laws.

Section 4.    Each Director shall serve for the term for which he shall have been elected, and until his successor shall have been duly chosen.

Section 5.    In case of any vacancy through death, resignation, disqualification, or other cause, the remaining Directors, by affirmative vote of a majority thereof, may elect a successor to hold office as a Director for the unexpired portion of the term of the Director whose place shall be vacant, and until the election of his successor.

Section 6.     Place of Meeting, etc.  The Board of Directors may hold their meeting and may have an office and keep the books of the Corporation (except as otherwise may be provided for by law) in such place or places in the State of New York as the Board from time-to-time may determine.

Section 7.     Regular Meetings.  Regular meetings of the Board of Directors attended by a least 7 of the 10 Directors of the Corporation (and the various committee chairmen whenever problems for discussion require their presence) shall be held monthly.

Section 8.     Special Meeting.  Special meetings of the Board of Directors shall be held whenever called by the direction of the President. The Secretary shall give notice of such special meeting by mail / delivered at least five (5) days before the meeting, or by telephoning the same at least one (1) day before the meeting to each member of the Board. Unless otherwise indicated in the notice thereof, any and all business may be transacted at a special meeting. At any meeting at which at least 7 of the 10 Directors shall be present, even though without notice, any business may be transacted.

Section 9.     Order of Business.  At meetings of the Board of Directors, the President shall preside. He will vote only if votes of other Directors are tied.

Section 10.     Contracts.  Except for programs requiring contracts or acts necessary for the proper maintenance of the corporate property, the Board of Directors shall submit all programs and acts which upon final completion require a total capital expenditure in excess of $5,000 (Five Thousand Dollars) for approval or ratification by the membership. A program or act shall be construed to mean an effort by the Corporation resulting upon completion of the program and beneficial occupancy by the Corporation on an increase in value of the Corporation's property, real or otherwise. Any contract or act that shall be approved or ratified by the Members at a meeting shall be as valid and binding upon the Corporation and upon all the Members as though it has been approved by every Member of the Corporation.

When finally executing such approved and ratified contract or act, it shall be signed by the President with or without the Corporate Seal, and by either the Treasurer, Vice President or Secretary, and shall be witnessed by two (2) other Directors of the Corporation.

Section 11.     The Board of Directors may designate an Assistant Treasurer and an Assistant Secretary.

Section 12.     All members of the Board of Directors shall be citizens of the United States of America.

## ARTICLE XI
## OFFICERS - NUMBER - TERMS OF OFFICE - DUTIES, ETC.

President
Vice President
Treasurer
Secretary

Section 1.      All of whom shall be elected by the Annual Membership Meeting for the term of one (1) year, i.e., from the date of election to the next Annual Membership Meeting.

Section 2.      One person may not hold more than one office.

Section 3.      Any officer shall be subject to removal at any time by the affirmative vote of a majority of the Annual or Special Membership Meeting.

Section 4.      In case of any vacancy through death, resignation, disqualification, or other cause, the President shall assume the vacant office until nomination and election of a new officer by a Membership Meeting for the unexpired portion of the term.

Section 5.      Each Officer of the Corporation shall devote his time, skill and energy to the affairs of the Corporation, unless the contrary is expressly consented to by the membership.

Section 6.      Powers and Duties of the President.  The President shall preside at all meetings of Members and the Board of Directors.  By virtue of his office he shall have general charge of the Corporation. He may sign and execute all authorized, affirmed or ratified contracts or acts, checks and other Obligations, together with either the Vice President, the Treasurer or the Secretary of the Corporation.  He shall do and perform such other duties as from time to time may be assigned to him by the Membership Meeting.

Section 7.      Powers and Duties of the Vice President.  The Vice President shall have such powers, and shall perform such duties as may be assigned to him by the membership meeting. He shall also assume the powers and duties of the President of the Corporation in the President's absence.

Section 8.      Powers and Duties of the Treasurer.  The Treasurer shall have the custody of all the funds and the securities of the Corporation which may come into his hands, when necessary or proper; he shall endorse on behalf of the Corporation for collection, checks, notes and other obligations, and shall deposit the same to the credit of the Corporation in a bank of unquestioned standing; he shall sign all receipts and vouchers for payments made for the Corporation;  jointly with one elected officer, preferably in all cases with the President, he shall sign all checks made out by the Corporation and shall pay out and dispose of same under the direction of the Board of Directors; he shall sign with the President all bills of exchange and promissory notes of the Corporation. Whenever required by the President, he shall render a statement of his cash account; he shall enter regularly, in books of the Corporation, to be kept by him for this purpose, full and accurate account of all moneys received and paid out by him on account of the

22

Corporation; he shall at all reasonable times, exhibit his books and accounts to any Officer of the Corporation and to any member of the Board of Directors upon application at the office of the Corporation during business hours, and he shall perform all acts incident to the position of the Treasurer.

Section 9.    Powers and Duties of the Assistant Treasurer.  The Assistant Treasurer shall have such Powers, and shall perform such duties, as may be assigned to him by the Board of Directors.

Section 10.    Powers and Duties of the Secretary.  The Secretary shall keep the minutes of all meetings of the Board of Directors, and also the minutes of the Annual or any Special Membership Meetings in books provided for that purpose; he shall attend to the giving and serving of all notices of the Corporation; he may sign with the President in the name of the Corporation. All contracts authorized, affirmed or ratified, and when so-ordered by the President, he shall affix the Seal of the Corporation thereto; he shall have charge of such books and papers as the President may direct, all of which shall at a reasonable time, be open to the examination of any Officer, or any member of the Board of Directors upon application at the Office of the Corporation during business hours; and he shall in general perform all the duties incident to the office of the Secretary.

Section 11.    Powers and Duties of the Assistant Secretary.  The Assistant Secretary shall have such powers) and shall perform such duties as may be assigned to him by the Board of Directors.

## ARTICLE XII
### Committees

Section 1.    Committee Chairmen, with their committees to assist the Board of Directors in the efficient management of the affairs of the Corporation shall be appointed or discharged at the discretion of the President. Such chairmen shall attend any meeting of the Board of Directors at which committee problems are being discussed.

## ARTICLE XIII
### Corporate Seal

Section 1.    The Board of Directors shall provide a suitable Seal, containing the name of the Corporation, which Seal shall be in the charge of the Secretary. If and when so directed by the President, a duplicate of the Seal may be kept and used by the Treasurer of the Corporation.

## ARTICLE XIV
### Leasing of Lots & Common Areas / Community Property

Section 1.    The Board of Directors may internally subdivide the property of the G.A.S.L., Inc. at Yaphank, New York (herein referred to as the "G.A.S.L., Inc. property") into individual lots, the number, size and boundary of each to be determined by the Board. Lots leased to members shall not be altered except by written agreement of the leasee.

Section 2.      The G.A.S.L., Inc. may lease such lots to persons qualified to be members of the G.A.S.L., Inc., and who prior to the commencement of such lease become members.

Section 3.      Parking on community roads overnight is prohibited. All common areas / community property shall remain vehicle-free. The roadways, parking areas and all common areas shall not be used for storage or long term parking (in excess of 24 hours without use) of any automobile, boat, trailer, camper, bus, truck or commercial vehicle.

Section 4.      Unlicensed recreational vehicles (mopeds, mini bikes, 4-wheel all-terrain vehicles, dirt bikes, etc.) are not permitted on the common grounds / community property of the G.A.S.L., Inc. property.

Section 5.      Individual Homeowners / Full Members are required to obtain their own liability insurance for their structures and lot.

Section 6.      Illegal substances are prohibited on the G.A.S.L., Inc. property. Anyone using or storing illegal substances on the G.A.S.L., Inc. property will immediately be asked to relinquish his or her membership.

Section 7.      Dogs – pets must be leashed or fenced in.

Section 8.      A lending or financial institution is permitted to take possession of a home for purposes of re-sale without becoming a G.A.S.L., Inc. member. However, all prospective buyers who intend to purchase the home from a lending or financial institution shall be required to apply for membership in accordance with Article III and become members with the G.A.S.L., Inc. as a condition to owning the home. Lending and financial institutions shall be responsible for all unpaid taxes, maintenance fees, and outstanding debts accruing during the entire period of time the lending or financial institution is in legal possession of the home. It is in the common interest of G.A.S.L., Inc. to enable its members and prospective home buyers to obtain mortgages to purchase or refinance a home at Siegfried Park.  Toward that end, G.A.S.L., Inc.'s Board will respond in good faith to written inquiries from homeowners/members and/or lending or financial institutions regarding homeowners/members and prospective buyers to mortgage for the purposes of acquisition or finance/refinance.

Section 9.      The G.A.S.L., Inc. shall enter into a written lease agreement with such members on such terms as the Board of Directors shall specify and on a form provided by the G.A.S.L., Inc., for that purpose. G.A.S.L., Inc. shall provide provisional extended leases to homeowners seeking a mortgage for a G.A.S.L., Inc. home from a financial institution.

Section 10.     No person, associate member or member may occupy or use any such lot without entering into a lease agreement with the G.A.S.L., Inc.

Section 11.     No member who holds a lease may sub-lease such lot whether or not for consideration.

24

Section 12.      No lot may be used for commercial purposes.

Section 13.      No person may construct or remove any structure on the property without the approval of the Board of Directors. A homeowner wishing to construct or remove any structure must obtain appropriate permits and any other certificates required by law. A copy of ALL permits / certificates must be submitted to the Board of Directors. All Homeowners / Members are responsible in obtaining their own Certificate(s) of Occupancy.

Section 14.      <u>Liens for the Non-Payment of Maintenance Fees, Taxes, outstanding debts.</u>  The G.A.S.L., Inc. shall have a lien against each home for its unpaid taxes, maintenance fees, and outstanding debts, to be entered into ninety (90) days after the due date of such outstanding debt. The Board of Directors may foreclose the lien in the same matter as a mortgage on real property and in doing so shall be entitled to recover all costs incurred including reasonable attorney's fees. The liability of each Homeowner / Full Member for the payment of taxes, maintenance fees and outstanding debts thereafter assessed against his/her home shall terminate upon a sale, transfer or conveyance of such home in accordance with the G.A.S.L., Inc. By-Laws. Upon a resale, transfer, foreclosure, etc., the new owner of the home, including a lending or financial institution, shall be liable for the payment of any such lien assessed against such home prior to the acquisition of such home by the new owner.

Section 15.      The homes or bungalows constructed on the G.A.S.L., Inc. property are the personal property of the member who constructs them. Such member may give, bequeath or sell their homes or bungalows (to another person, subject to article XIV, Section 17 of these By-Laws.

Section 16.      Any person who owns such a structure shall be given the first option to lease the lot upon which it stands or to renew a prior lease, providing such person meets the requirement of these by-laws.

Section 17.      Plants, shrubs, and trees located on community property / common areas shall not be altered or removed without the Board of Directors' approval. Any member wishing to remove a tree from their lot must receive permission from the Grounds Committee Chairperson prior to tree removal.

Section 18.      Any person who is given ownership interest in a bungalow or home located on the G.A.S.L., Inc. property who is not a member of the G.A.S.L., Inc., must do one of the following within thirty (30) days of the time they are given ownership interest:

      a.) Apply for membership in the G.A.S.L., Inc. and be approved for membership.

      b.) <u>Sell their interest to a person qualified to be a member</u>.

            i.   Advertising in consumer or trade journals, print and electronic publications, news publications, and multiple listings services is

permitted. One standard "For Sale" sign no larger than 18 inches x 24 inches may be placed on a homeowner's front lawn. A floating "For Sale" sign is permitted. One "For Sale" sign no larger than 8 inches x 12 inches is permitted on the community bulletin board. One open house sign may be placed on a home's front lawn during the day of an open house.  In addition, one open house sign may be posted at the intersection of Mill Road and Private Road located at the main entrance of the G.A.S.L., Inc. property during the day of an open house. Open house signs shall be no larger than 18 inches x 24 inches.

    ii.    Members are permitted to retain their own real estate brokers or agents, at their own expense, to market and/or list their homes for sale.

c.) <u>Remove the structure from the property</u>.  The site where the structure has been removed from shall be left clean of all debris and level with the surrounding area.

d.) <u>Transfer the structure to the G.A.S.L., Inc.</u>  The failure to comply with this section will be considered the abandonment of the structure.

Section 19.     All Homeowners must advise the Board in writing if they intend to sell their G.A.S.L., Inc. home. The written notice shall be provided to the Board prior to the Homeowner advertising, listing, or showing the home for sale. The written notice must be signed by each Homeowner of the G.A.S.L., Inc. home that is for sale.

Section 20.     A member who fails to renew his lease or who loses his membership status shall have ninety (90) days to dispose of his home or bungalow as provided in Section 10.

Section 21.     Any structure which is abandoned for ninety (90) days shall be considered the property of the G.A.S.L., Inc., who may dispose of it as it deems appropriate.

Section 22.     <u>Default.</u>  In the event a Homeowner / Member does not pay any sums, charges or assessments required to be paid when due, the Board of Directors, acting on behalf of the membership shall notify the Homeowner / Member, if any, of such home. If such sum, charge or assessments shall remain unpaid for ninety (90) days after the giving of such notice, the Board may foreclose the lien encumbering the home as a result of the non-payment of the required moneys. In the event the owner of a home does not pay the assessment required to be paid by him/her within thirty (30) days of its due date, said sum shall bear interest at the maximum amount permitted by the State of New York from its due date and said Homeowner shall be liable for the Corporation's reasonable costs and reasonable attorney's fees incurred by it incident to the collection or enforcement of such lien.

## **ARTICLE XV**

Section 1.      The By-Laws can only be amended, created or repealed by an affirmative vote of a majority of the members present and entitled to vote at the annual meeting or a special meeting. A vote may only be taken at a special meeting when notice of the proposed change is given at least thirty (30) days in advance with the meeting notice.

Section 2.      All former by-laws are hereby repealed.


This edition of the G.A.S.L., Inc. By-Laws / Constitution was accepted as written by the Membership at the Annual General Membership Meeting held on _____, 2015.




_____          _____
, President                    Date                    , Secretary          Date

27

**EXHIBIT B**

January __, 2016

**CERTIFIED MAIL**

Joseph Mottola, CEO
Long Island Board of Realtors
75-35 31st Avenue
East Elmhurst, New York 11370

      Re:    German-American Settlement League, Inc.
              P.O. Box 444, Yaphank, New York 11980

Dear Mr. Mottola:

Please be advised that the German-American Settlement League, Inc. ("G.A.S.L., Inc.") has revised its Constitution and By-Laws in furtherance of G.A.S.L., Inc.'s commitment to equal housing opportunity. G.A.S.L., Inc. welcomes real estate brokers and agents to list houses for sale, show houses, hold open houses, and advertise homes for sale in the G.A.S.L., Inc. community in accordance with G.A.S.L., Inc.'s Constitution and By-Laws.

Thank you for your attention to this matter.

Very truly yours,

Robert Kessler, President
German-American Settlement League, Inc.

28

**EXHIBIT C**


January __, 2016

**CERTIFIED MAIL**

Edward P. Romaine, Supervisor
Town of Brookhaven
1 Independent Hall
Farmingville, New York 11738

      Re:    German-American Settlement League, Inc.
              <u>P.O. Box 444, Yaphank, New York 11980</u>

Dear Mr. Romaine:

      Please be advised that the German-American Settlement League, Inc. ("G.A.S.L., Inc.") has revised its Constitution and By-Laws in furtherance of G.A.S.L., Inc.'s commitment to equal housing opportunity.  Membership in G.A.S.L., Inc. is open to all qualified persons regardless of race, national origin, or religion.  Owners of homes in the G.A.S.L., Inc. community are permitted to advertise their homes for sale and hold open houses.

      Thank you for your attention to this matter.


              Very truly yours,



              Robert Kessler, President
              German-American Settlement League, Inc.


29

January __, 2016

**CERTIFIED MAIL**

Rabbi Dr. Steven A. Moss, Chairperson
Mary E. Porter, Executive Director
Suffolk County Human Rights Commission
P.O. Box 6100
Hauppauge, New York 11788

      Re:    German-American Settlement League, Inc.
                <u>P.O. Box 444, Yaphank, New York 11980</u>

Dear Rabbi Moss and Ms. Porter:

      Please be advised that the German-American Settlement League, Inc. ("G.A.S.L., Inc.") has revised its Constitution and By-Laws in furtherance of G.A.S.L., Inc.'s commitment to equal housing opportunity.  Membership in G.A.S.L., Inc. is open to all qualified persons regardless of race, national origin, or religion.  Owners of homes in the G.A.S.L., Inc. community are permitted to advertise their homes for sale and hold open houses

      Thank you for your attention to this matter.

                                Very truly yours,

                                  Robert Kessler, President
                                  German-American Settlement League, Inc.

**EXHIBIT D**

German American Settlement League, Inc.
**EXTENDED LEASE AGREEMENT**

German American Settlement League, Inc.         Full member(s) / Homeowner(s)
P.O. Box 444
Yaphank, NY 11980                                            _____
                                                                            _____
                                                            Address_____
                                                                            _____
                                                            Telephone_____


Premises: _____

Lease Date: _____

Term Beginning: _____

Term Ending: _____


This agreement pertains to Lot # _____ ("the premises") which is the property
of the German American Settlement League, Inc. ("G.A.S.L.") located at Siegfried Park, P.O.
Box 444, Mill Road, Yaphank, New York.

## Terms and Conditions

1. The G.A.S.L. leases the premises to you the tenant(s), for the calendar year(s) stated in said
lease agreement. You the tenant(s), agree to pay the rent and other charges as required in this
agreement. You the tenant(s), agree to abide by this agreement and the G.A.S.L. By-Laws.

2. In the event the G.A.S.L. consults with or engages counsel on account of a breach of any of
the provisions of this agreement, all attorneys' fees and legal costs, and expenses incurred by the
G.A.S.L. shall be paid by the tenant.

## Terms and Conditions

3. You the tenant(s) have the right to erect and maintain a structure on the premises in
accordance with the G.A.S.L. By-Laws. Any such structure should conform with all appropriate
municipal regulations and requirements. Upon the end of this agreement you will be given first
chance to lease for the next year provided you fulfill the requirements under the G.A.S.L. By-
Laws If you fail to lease for the next year, you may sell your building to a person qualified to be
next year's tenant.

31

4. You may not lease or sublease the building on the premises. The premises may not be used for commercial purposes.

5. This extended lease agreement shall have a term as set forth above, said agreement for _____ year(s) will be terminated, null and void at the time your loan / mortgage is satisfied. The extended lease agreement does not supersede the regular annual lease for the premises which members must re-new on a year-to-year basis with G.A.S.L.

6. The G.A.S.L. is not responsible for any debts / liens incurred by a homeowner who may enter into contract with any lending or financial institutions. The G.A.S.L. shall be notified by the financial institution of any default by the borrower, and have the first option to purchase the dwelling. A lending or financial institution is permitted to take possession of a home for purposes of re-sale without becoming a G.A.S.L. member. However, all prospective buyers who intend to purchase the home from a lending or financial institution shall be required to apply for membership and become members of the G.A.S.L. as a condition to owning the home. Lending and financial institutions shall be responsible for all unpaid taxes, maintenance fees, and outstanding debts accruing during the entire period of time the lending or financial institution is in legal possession of the home. G.A.S.L.'s Board will respond in good faith to written inquiries from homeowners/members and/or lending or financial institutions regarding efforts by homeowners/members and prospective buyers to obtain mortgages for the purposes of acquisition or finance/refinance of a home at Siegfried Park.

7. *I the tenant, hereby acknowledge that I have received the copy of the G.A.S.L. By-Laws and acknowledge that I have read and understood the terms of this agreement together with the G.A.S.L. By-Laws and that they are part of this agreement.*

Please use this signature line below as confirmation and acceptance of this extended lease agreement.

_____          _____

German American Settlement League, Inc.                              Date

X_____          _____
  Tenant                                                                          Date

X_____          _____
  Tenant                                                                          Date

**EXHIBIT E**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LONG ISLAND HOUSING SERVICES, INC.,
PHILIP KNEER, and PATRICIA FLYNN-
KNEER,

                    Plaintiffs,

          v.

GERMAN-AMERICAN SETTLEMENT
LEAGUE, INC.,

                    Defendant.

Case No. 15 Civ. 05987 (JMA)(AYS)

**STIPULATION AND ORDER OF
DISMISSAL WITH PREJUDICE**

        WHEREAS, Plaintiffs and Defendant, through their undersigned counsel, stipulate and agree as follows:

        1.     This action is hereby dismissed with prejudice, pursuant to the terms of the Settlement Agreement and Order signed by the Court on _____, 2016.

        2.     The Court shall retain jurisdiction over this action for the sole purpose of enforcing compliance with the terms of the Settlement Agreement and Order.

        3.     A facsimile or scanned copy of this stipulation will be considered the same as an original and may be filed with the court electronically or by facsimile transmission.

Dated: _____, 2016
       New York, New York

*[signature page to follow]*

33

EMERY CELLI BRINCKERHOFF &
   ABADY LLP

MILBER MAKRIS PLOUSADIS
   & SEIDEN, LLP

By: _____

By: _____

   Diane L. Houk
   O. Andrew F. Wilson
   600 Fifth Avenue, 10th Floor
   New York, New York 10020
   *Attorneys for Plaintiffs*

   Elizabeth R. Gorman
   Christo C. Hadjicharalambous
   1000 Woodbury Road, Suite 402
   Woodbury, New York 11797
   *Attorneys for Defendant*

It is so ORDERED this _____ day of _____ 2016.

_____
HON. JUDGE JOAN M. AZRACK
UNITED STATES DISTRICT COURT JUDGE

34

## EXHIBIT F

## MEDICARE RELEASE

1. <u>Medicare Information</u>. Pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, The Center for Medicare and Medicaid Services must be provided Plaintiffs Philip Kneer's and Patricia Flynn-Kneer's ("Plaintiffs'") full address, Social Security Number, date of birth, gender and, if available, their Medicare Health Insurance Claim Number (HICN). Provision of this information is a condition of this settlement. Spaces are provided at the end of this Agreement for compliance.

2. <u>Liens – Indemnity and Hold Harmless</u>. It is expressly understood and agreed, to the extent applicable, that Plaintiffs covenant and agree that any and all Medicare, Social Security, hospital, medical insurance coverage subrogation claims and/or any and all other type of liens or interest that is and/or could be claimed by any person and/or entity, will be fully paid, satisfied and released from the settlement proceeds paid herein, in trust, unless and until such time as said liens and/or claims have been fully paid, satisfied or released. In this regard, Plaintiffs agree to indemnify and hold harmless Defendant German-American Settlement League, Inc. ("Defendant"), their insurance carriers, their attorneys and all others in privity with them, from any claim by, through and/or under Plaintiffs, including, but not limited to, any direct claim by Medicare and/or Social Security for reimbursement of any funds paid by them relating to the injuries and claims arising from the incident in question.

3. <u>Medicare Set Aside</u>. It is further expressly understood and agreed, to the extent applicable, Plaintiffs covenant that they will set aside funds necessary in any approved Medicare Set Aside Account, to pay for any anticipated future medical and/or health care needs of Plaintiffs for any injury and/or condition that requires treatment that arises from the injuries related and/or caused by the alleged conduct described in the Complaint filed by Plaintiffs in United States District Court for the Eastern District of New York under Docket No. 15 CV 05987 (the "Complaint"). In the alternative, Plaintiffs shall covenant that they do not presently anticipate that Plaintiffs will require medical and/or health care treatment for their injuries and/or conditions related and/or arising from the incident in question. Further, should funds not be placed in an approved Medicare Set Aside Account for Plaintiffs, and care and treatment for injuries and/or conditions reasonably related to the incident is subsequently sought, then Plaintiffs covenant and represent to Defendant, their insurance carriers, their attorney and others in privity with them, that Plaintiffs will not submit nor seek payment for said medical care from Medicare and/or any other government funded program. This covenant and representation shall be included as part of the indemnification obligations of Plaintiffs stated herein. It is understood and agreed that the information provided below will be provided to The Centers for Medicare and Medicaid Services pursuant to The Medicare, Medicaid and SCHIP Extension Act of 2007.

4. <u>No Future Care Alleged</u>. No money out of the Settlement Amount is allocated towards future medical treatment. While it is impossible to accurately predict the need for future

35

treatment, this decision was based upon a good-faith determination of Plaintiffs and Defendant in order to resolve a claim. Plaintiffs and Defendant have attempted to resolve this matter in compliance with both state and federal law and it is believed that this Agreement adequately considers Medicare's interest and does not reflect any attempt to shift responsibility of treatment to Medicare pursuant to 42 U.S.C. §1395y(b). In the event Medicare requires reimbursement related to future medical treatment, this would be the sole responsibility of Plaintiffs.

*To be completed by Plaintiff Philip Kneer:*

Full Name as it appears on your                    Social Security Number
Social Security Card

_____                    _____

Address                                                        Date of Birth

_____

_____                    _____

Medicare Health Insurance Claim                Gender
Number (HICN)

_____                    _____
(IF NONE, STATE "NONE")

*To be completed by Plaintiff Patricia Flynn-Kneer:*

Full Name as it appears on your                    Social Security Number
Social Security Card

_____                    _____

Address                                                        Date of Birth

_____

_____                    _____

Medicare Health Insurance Claim                Gender
Number (HICN)

_____                    _____
(IF NONE, STATE "NONE")

36

5.      Plaintiffs further declare under the penalty of perjury under the laws of the State of New York, that Plaintiffs did not receive any treatment for any injuries related to the incident(s) giving rise to any and all claims alleged in the Complaint or released in this Agreement and Plaintiffs did not submit any treatment to Medicare for any injuries related to the incident(s) giving rise to any and all claims alleged in the Complaint or released in this Agreement.

IN WITNESS WHEREOF, the parties hereto, each intending legally to bind themselves and their respective successors and assigns, have executed and signed this Agreement as of the date first above written.

_____
**Philip Kneer**

STATE OF                                )
                                        )          ss.:
COUNTY OF                               )

On _____, 2016, before me came Philip Kneer, to me known, who executed the foregoing Agreement, and duly acknowledged to me that he executed the same as his act for the purposes expressed herein.

_____
Notary Public

IN WITNESS WHEREOF, the parties hereto, each intending legally to bind themselves and their respective successors and assigns, have executed and signed this Agreement as of the date first above written.

_____
**Patricia Flynn-Kneer**

STATE OF                                )
                                        )          ss.:
COUNTY OF                               )

On _____, 2016, before me came Patricia Flynn-Kneer, to me known, who executed the foregoing Agreement, and duly acknowledged to me that she executed the same as her act for the purposes expressed herein.

_____
Notary Public

37